Good morning, Your Honor. Good morning. First of all, let me just thank the panel. It's an honor to be before the Ninth Circuit. It's my first time here. Can we get your name for the record, please? Craig Ackerman for Ms. Barrios, the appellant. I'd like to reserve one minute, please, for rebuttal. We're here today appealing Judge Manuel Riel's complete denial of attorney's fees to the prevailing party. Ms. Barrios, after a hard-fought two-and-a-half-year Title VII litigation where only two claims were asserted, retaliatory termination under Title VII and retaliatory termination under FIA, the jury returned a general verdict for the plaintiff in the amount of $8,500, and Judge Riel entered a judgment indicating that we were the prevailing party. Subsequent, after we filed our fees motion, the court denied the fees completely. And we're contending here today that that was not only an abuse of discretion, but it was an egregious abuse of discretion, particularly since some of the rationale of the district court relied on pure errors of law. I have three arguments as to why that's the case. First of all, Counsel, before you embark on that, here there was an offer of judgment, $50,000, and that was refused by your client. What does that do to the right to attorney's fees? Yes, Your Honor. The offer of judgment was made in July of 2008, shortly before trial. If the court had done a proper analysis of Rule 68, potentially it could have eliminated any post-offer, post-Rule 68 offer fees and costs. As the United States Supreme Court has made clear, attorney's fees are part of the costs under Title VII that are awardable to the prevailing party. Of course, Judge Riel did not perform any kind of analysis as to what our attorney's fees or costs were, as of the date of the Rule 68 offer, which was made two and a half years into the litigation. A mentor of mine had said that a different district court judge may have asked me, or done a thorough analysis of that and come back and really analyze what were the appropriate fees as of that date. According to our assessment, it was over $149,000 in load start time, as well as another, I think it was $16,000 in costs as of that date. So to perform the analysis properly under the Merrick v. Chesney case and also the Ninth Circuit case of Corder v. Gates, what you would have to do is take the jury verdict of $8,500 and add it to the fees and costs as of the date of the Rule 68 offer to see whether the combination of the fees and costs as of that date with the jury verdict is greater than the $50,000 offer, which, of course, was an all-in offer of fees and costs. The reality here was that the offer was made, in my view, improperly on the record right before the jury was impaneled. Judge Riel felt that we should take it. I felt that because the client owns the fee under the U.S. Supreme Court case of Evans v. Jeff D., and because our retainer agreement said that the 50% of the amount obtained, including any attorney's fees awarded, would go to the client, I felt that after conferring with her, my recommendation was to reject this. The defendant had forced us to litigate, despite our efforts to settle at the beginning of the case, for two and a half years, and I felt that we were going to win on liability, which, in fact, is exactly what happened. And so I think, Your Honor, that if the Rule 68 analysis was performed, that would be an independent basis. That was going to be my third argument, is that the Court, in its order, referred to Rule 68. It actually did not refer to it in the context of the attorney's fees. He said special circumstances existed to deny fees entirely. But then in the context of litigation costs itself puzzling, he did mention Rule 68, but without having conducted any analysis of what the reasonable fees and costs incurred by the plaintiff's counsel were as of the date of the Rule 68 offer. By itself, the Court could hold that that's reversible error and remand for an analysis on that point, if, indeed, the district court hinged his ruling on Rule 68. It's not clear that he did. What do you make of his handwritten note that says the result is far out of kilter with the attorney's fees allegedly expended? Right. Well, I think that what Judge Real was saying there is that we got an $8,500 jury award and he felt that our fee request was exorbitant in light of that. However, the United States Supreme Court has decided that against the rule of strict proportionality, in other words, the mere fact that the fees are a higher proportion, a very large proportion versus the amount awarded is not by itself a basis to deny fees entirely. No one has ever said that. The courts have consistently said that it's a factor, that you have to look at the success, and limited success can be a factor. Let me ask you a hypothetical question. Yes, Your Honor. Suppose the jury came back and said the defendant shorted your client $10, so you're entitled to $10. Do you think it would make economic sense to spend $160,000 in attorney's fees to chase $10? No, Your Honor. And that's precisely why Rule 68 exists. As the Supreme Court said in the City of Riverside case, there are mechanisms in place to avoid a windfall to the plaintiff's counsel. On day one after that case is filed, the defendant can make a Rule 68 offer for $11 and the plaintiff will never be entitled to attorney's fees. But that's not what happened here. We waited two and a half years before we got the Rule 68 offer. I'm not asking about the Rule 68 offer. His argument is that you spent more money, the attorney's fees expended, when I justified given the amount that was in controversy. Well, Your Honor, the statute provides for compensatory damages, emotional distress damages, and it places us in a difficult situation. Obviously, my client was not hospitalized in a psychiatric ward. That is a difficult thing to analyze, exactly how much a jury may award in emotional damages. And when you do the jury verdict research, it's all over the place in retaliation cases. Okay, but you just told me $10, it would be out of kilter. Well, in your fact pattern, Your Honor, there is no emotional distress potentially available. How about if it were $100? Pardon? How about if they awarded you $100? I mean, at what point do you say your fees don't reflect any economic reality? Well, Your Honor, these are special statutes, the civil rights statutes, and the Supreme Court has said there has to be a mechanism for small but meritorious claimants to pursue their claims. Let me pose the following hypotheticals, Your Honor. Let's say there was a banker. I mean, my client was awarded three months' back pay because she got another job three months after she was fired. Let's say you had an investment banker making a million dollars a year, and so for those three months her damages were $300,000. Is this panel going to say that it's the law, that in that exact same case of retaliation with the same exact fact pattern where three months' back pay are awarded, she'll be able to get full attorney's fees under Title VII? That my client, because she's a maintenance worker who's a low-wage earner and the jury awarded three months' back pay, she's not entitled to any attorney's fees? That can't be the law. So I also wanted to point out that Judge Riel, in his order, pointed out that the attorney's fees contract was fee-splitting with a non-lawyer. This is a truly puzzling and erroneous ruling because in the Los Angeles Lawyer, December 2009, the Los Angeles County Bar Association, Ethics Opinion 523, the topic of the article, can a lawyer ethically agree with a client to a contingency fee which is based on a percentage of the combined amount of damages and any statutory fees awarded? After going through all the case law, the Bar Association concludes it is the committee's opinion that an otherwise valid retainer agreement may call for the division of the statutory award of attorney's fees between an attorney and a client without running afoul of Rule 1320A's prohibition upon fee-splitting with a non-lawyer. This is the same conclusion reached by another ethics committee. Albeit under the law of another state, referring to the Oklahoma Bar Association. The Court's ruling here has widespread ramifications on all plaintiff's contingency fee agreements because our fee agreement is not atypical. And I think that it would be somewhat of an issue of first impression. It's integral to the Court's ruling. He references it. He mentioned it in the oral argument. And he held, strangely, that this somehow created a conflict of interest with the plaintiff. It's actually the opposite. Because if we had a retainer agreement where we would capture the whole fee, then our interest truly would be at first with the plaintiff. But because the plaintiff is capturing 60 percent of our fee under our retainer, the more that the fee is awarded, we're on the same page. We both have an incentive to maximize the recovery of the jury and to do the best work possible. I see Judge Wardlaw has a question, and you're out of time. I have two real quickly. The first one is you had made efforts to sell this case during those two and a half years. Yes, Your Honor. And you actually had a mediation, one or two mediations? We had two, Your Honor. And the time spent on the mediation was part of the attorney's fees? It was, Your Honor. And they both failed? That's right. We accepted a mediator proposal, but the other side rejected it. All right. And then my other question is in terms of reassignment of this case to another judge, why do you argue that we should reassign it? What is that based on? Yes, Your Honor. We argue in our papers that basically the judge hated us as a result of my refusal to settle the case on the terms that he felt were fair. It was exhibited through one-sidedness of the rulings on the evidentiary matters. You know, parenthetically, the court reporter told me he was about to cry on one of the breaks to hang in there because everybody in the room could see what was going on. That's not really in the record, is it? No, Your Honor. It's not. But my point is that out of the 30-plus objections that were made, almost all of ours were overruled except for one. All of the other sides were sustained except for one. When I thanked the judge for sustaining an objection, he reprimanded me. When the other side, Mr. Willoughby, thanked the judge for sustaining an objection, the court said nothing. And I think that there's an inference of bias even in awarding us zero fees in this case. If the court does remand it to Judge Real, I'm afraid we might be back here because there was also an instance where I sent a really silly e-mail I sent to the other side and they were telling me that the court didn't like us and he would award us zero, which indicated that the Ninth Circuit had overturned Judge Real repeatedly, and that was included in supplemental papers to the court before our fees motion was heard. That was my mistake, but it was in the context of settlement discussions, and I feel like that is also biased in the district court instance. Mr. Willoughby? Thank you, Willoughby. I'm on behalf of Diamond Contract Services. Naturally, we believe the court's ruling in this matter was correct. The problem here is when one places the interest of the attorney above the interest of the client. In this matter, the initial demand was $80,000. The lost wages amounted to $2,100. I argued at trial that they should award her $2,000 and the jury awarded her $2,100. I believe that our office and my client made a proper analysis as to what the value of the case was. It wasn't $80,000, so we couldn't offer that. But if you thought it was worth $50,000 right before trial, why didn't you take any of the lower amounts at the beginning or earlier so that the attorney's fees wouldn't be built up to such a higher amount? The offer of $50,000 wasn't based upon what we valued the case. The offer of $50,000 was also the cost of putting on a trial and things of that nature, having our expert come to testify. By delaying the resolution or settlement of this case for two and a half years, you were in part responsible for the additional attorney's fees that were incurred by the plaintiff in this case. Well, if there had been a reasonable demand, the case would have settled. Counsel, the mediator offered an amount. The opposition accepted it, and you denied it. So there was, in fact, an offer that could have settled the case. Well, the mediator offered an amount based upon what she felt a jury's reaction would be to the allegations. What was that amount, counsel? I believe that she made an offer of over $100,000, which we felt was out of line. Well, didn't the plaintiff's first demand letter suggest a range between $10,000 and $80,000? No. They suggested that we offer them $10,000, and they would make a counteroffer of $80,000, and we would negotiate somewhere in between. The problem at that time is that we had no facts, and the facts supported their case. This was early in the litigation. Thereafter, there was no offer tendered by the plaintiff. Didn't the EEOC give her a right to sue letter early on? Yes, they gave her a right to sue letter based upon the fact that right after a complaint, she was terminated, and that that raised the inference that it was a wrongful termination. Right. And we agreed with that, and we believed that if they felt it was wrongful termination, it was of value to her services at the company, and the jury found in line with what we felt. At the trial, I argued it was $2,000. The jury gave her $2,100. The defense should not be punished for accurately assessing the value of a case and tendering that amount. Mr. Lewis? I'm sorry. I don't understand your characterization of you being punished by having to pay statutory attorney's fees in a Title VII action to a prevailing party. Yes. Well, just because there's a statutory scheme, and mind you, the appellants in this matter also referred the court to Chavez pending California Supreme Court case, which looked at this issue, and Chavez held, pursuant to CCP 1033, that if you don't reach the value of the statutory minimum, you shouldn't get attorney's fees, and therefore denied it. Does Title VII have any statutory minimum? No, but it's an analogous statute. And the thing is to dissuade attorneys from running up fees on a de minimis case and making an unreasonable demand. Let me tell you how I see it, and you tell me where I missed the boat, okay? I think you've got a legitimate gripe that they brought a case and asked for the moon and the stars and it was only worth a small amount of money. The problem is they filed their complaint in 2007, early in 2007, and you, for whatever reason, didn't get around to filing your Rule 68 offer until July of 2008. As a result of that, they ran up a bunch of attorney's fees until you filed your Rule 68 offer, and that cuts things off. That being the case, my thinking is Judge Real, when you filed your July 23, 2008, offer judgment should have figured out what their reasonable fees were at that point. And if it was $3,000, it's $3,000. If it's $160,000, whatever it is. But, I mean, it was his obligation at that point to cut it off, figure out what it was. But he didn't do that. In the case with the trial, they gave him zip. So it seems to me the mistake Judge Real made is not evaluating what the fees were back on July 28. Nothing past that, but July 23, 2008. Where am I wrong on that? Well, had the plaintiffs made an offer within the ballpark of what the value of the case was, then I would agree with the court. But the way you protect yourself is by filing a Rule 68 offer. I understand. But what I'm saying is that they made an offer ten times the amount of what the jury awarded. Now, should the defense proffer funds just because there's an exorbitant demand compared with the value of the case? I'm saying when you decided you were going to cut this off, you just waited too long and allowed them to run up the bill. You could have stopped the meter by filing this sooner. Well, there were allegations that they made and the discovery was undertaken. Once the discovery had been undertaken and we realized that our initial position was the correct position, we tendered the offer. That really doesn't address my point that the clock has been going on for a year and a half because that's when you decided to file your Rule 68 off. Well, the position is that had the appellants made a reasonable offer, we would have settled this case. Well, they can ask for a trillion dollars. It doesn't matter. The way you protect yourself is by filing what you think it's worth, you know, by filing your offer of judgment. And you didn't do that until after they expended X amount of dollars in attorney's fees. Now, the problem is Judge Real didn't determine what the X is, but it doesn't matter what they asked for. You can assess it. You've been around the block. You apparently assessed it pretty accurately too, but you didn't get around to filing your offer until, you know, a year and a half or two years into attorney's fees. Yeah. Your Honor, we filed the offer when we realized what the exposure truly was. And we gave them an additional sum within the offer based upon the fact that there's some unknowns in going to trial and there was a cost of defense. Thank you. Thank you, Mr. Willoughby. Mr. Ackerman, you used up your time. We'll give you one minute if you will keep it to a minute. Thank you very much. With respect to the Chavez case, I just wanted to mention that there is no limited jurisdiction equivalent in federal court. The whole rationale of this Chavez case in that FIA decision was that if you could have filed a limited jurisdiction in state court under $25,000, you should have, and therefore the court has discretion to award zero fees. That doesn't apply in Title VII. In federal court, there is no limited jurisdiction. That was 1033A of the CCP. In terms of what the appropriate deduction might be or should be for limited success on the merits, I would point the court to both the Corder and Cabrales decisions. In Cabrales v. County of Los Angeles, the court, the Ninth Circuit, upheld a 25% reduction of Lodestar based on limited success. And in Corder v. Gates, which is 947F2nd at 378, the Ninth Circuit said it's clear that a 20% reduction for limited success is in some cases sustainable. So there is a body of case law that Judge Real could and should have looked to as to how to go about reducing our Lodestar. Of course, the fee has to be reasonable. We're not asking for anything more than a reasonable fee, but zero is not reasonable. Thank you. We'll be also at the case restart. You just a minute. Good morning. Good morning. 10-55759 Smith v. Niadi. Each side has 10 minutes.
judges: Fletcher, Silverman, Wardlaw